JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiffs-appellants, Lisa Lynn Kay and Mark Kay, appeal from a common pleas court order granting summary judgment in favor of Ms. Kay's former employer, defendant-appellee Grande Point Healthcare Community. The Kays urge that there were genuine issues of material fact on their claim that Ms. Kay was injured as a result of a workplace intentional tort committed by Grande Point. We find no error in the trial court's decision and affirm its judgment.
 {¶ 2} The complaint in this case was filed January 4, 2007, and alleged that Ms. Kay was employed by Grande Point on July 22, 2003, when "she was required to assist with a violent patient who had been admitted to Defendant's facility, released, and then readmitted, when the Defendant knew or should have known that said patient had a propensity toward violence and could cause harm and danger to those assisting in his care." The complaint averred that the patient assaulted Ms. Kay, causing her to suffer physical injuries, and that Grande Point was liable pursuant to Blankenship v. Cincinnati Milacron Chemicals,Inc. (1982), 69 Ohio St.2d 608; Jones v. VIP Development Co. (1984),15 Ohio St.3d 90; and Fyffe v. Jenos, Inc. (1991), 59 Ohio St.3d 115. Mark Kay sought damages for loss of consortium with his wife.
 {¶ 3} Grande Point filed a motion for summary judgment on January 25, 2008. With its motion, Grande Point filed transcripts of the deposition of Ms. Kay and of Stacy Kiel, a charge nurse in the skilled care area, and the affidavits *Page 4 
of Grande Point's administrator, Melissa Schaefer, and its medical director, Dr. Lawrence Gray, M.D. The Kays responded, adding to the evidence before the court the transcripts of the depositions of Ms. Schaefer and of Madeline Owens, the facilities manager, as well as Ms. Kay's medical experts' reports. This evidence shows the following undisputed facts.
 {¶ 4} Grande Point is a nursing home and assisted living facility in Richmond Heights, Ohio with 150 residents in the nursing home and 62 in the assisted living facility. Ms. Kay was a licensed practical nurse who had been working at Grande Point since May 2001.
 {¶ 5} On July 11, 2003, a male resident (the "Resident") was admitted to Grande Point's skilled nursing unit. On July 19, 2003, the Resident took a leg rest off his wheelchair and threw it through a window in an effort to escape. He was sent to University Hospitals where he was examined by a physician and returned to Grande Point. After he returned to Grande Point, he was restrained with a "Posey restraint," a vest which restricts the patient's arms, a "geri tray," which keeps the patient seated in a wheel chair, and wrist restraints. In addition, the Resident was medicated with Haldol. Ms. Kay said that whenever she saw the Resident, he was in a "geri chair" with a tray and a Posey restraint.
 {¶ 6} On July 22, 2003, Ms. Kay was working in the long term care portion of the facility. Another nurse, Judy Green, was following the Resident down the hall and yelled to Ms. Kay to "grab him" or "stay with him," "[h]e's trying to get *Page 5 
out." Ms. Green ran to retrieve the Resident's geri chair. Ms. Kay spoke calmly to the Resident, telling him he couldn't leave, that he should stay and wait for Judy to come back with the chair. The Resident grabbed Ms. Kay's wrists and pushed her down the hall. Although she pleaded with him to let her go, he told her, "I'm going to kill you." He punched her in the cheek, then lifted her up and threw her across the room.
 {¶ 7} The common pleas court entered summary judgment for Grande Point, holding that the Resident, a human being, was not a "dangerous process, procedure, instrumentality or condition" within Grande Point's business operation as to which Grande Point had knowledge. Moreover, the court found, even if the Resident was a "dangerous process, procedure, instrumentality or condition," Ms. Kay could not demonstrate that Grande Point either intended to harm Ms. Kay or knew with substantial certainty that the Resident would cause her harm. Therefore, the court found, there were no genuine issues of material fact and Grande Point was entitled to judgment as a matter of law.
 {¶ 8} In order to demonstrate intent for purposes of proving that an employer has committed an intentional tort against its employee, the employee must demonstrate "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, *Page 6 
then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."Fyffe v. Jenos, Inc. (1991), 59 Ohio St.3d 115, 118.[1]
 {¶ 9} The proof required goes beyond that necessary to establish either negligence or recklessness. "Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk-something short of substantial certainty — is not intent." Id. at paragraph two of the syllabus.
 {¶ 10} It is unnecessary for us to decide the broad question whether a human being may ever be a dangerous "instrumentality or condition" within a *Page 7 
business operation, whom an employer may be substantially certain will cause injury to an employee. We do not believe the Ohio Supreme Court's decision in Kerans v. Porter Paint Co. (1991), 61 Ohio St.3d 486, 495, definitively decides this issue. The court in Kerans did not hold that an employer cannot be liable for human conduct under an "employer intentional tort" cause of action. Rather, the court cited several reasons for refusing to require the plaintiff in a sexual harassment case to meet the heightened intent standards of a claim for employer intentional tort. Among other things, the court found it "glaringly obvious" that sexual harassment was not among the torts under consideration when the "employer intentional tort" theory was formulated. A considerable logical leap is necessary to proceed from this statement to the conclusion that human conduct cannot form the basis for an employer intentional tort claim.
 {¶ 11} Even if the Resident could be considered a dangerous instrumentality, there was no evidence that Grande Point knew he was substantially certain to injure an employee. The Resident had previously broken a window trying to escape the facility. Neither the Resident nor anyone else was injured in this incident. This single, directed[2]
episode of property damage does not demonstrate that the Resident was substantially certain to injure an employee, much less that Grande Point knew it. *Page 8 
 {¶ 12} After the Resident returned from the hospital, he was restrained every time Ms. Kay saw him for the next few days. Grande Point's use of restraints on the resident, in and of itself, does not demonstrate knowledge that the resident posed a danger to employees. Restraints can serve many purposes. It is at least equally likely that the restraints were used to prevent the Resident from attempting to leave, or to prevent him from injuring himself.
 {¶ 13} It is not clear why the Resident was not restrained at the time of the incident in question.[3] However, in light of the fact that the restraints were not necessary to protect employees in the first place, the removal of the restraints, even if intentional, does not demonstrate that Grande Point knew he was substantially certain to cause anyone injury. Indeed, the Resident was not even combative or confrontational with Ms. Green.
 {¶ 14} Accordingly, we agree with the trial court that there was no genuine issue of material fact. There was no evidence that Grande Point knew that the Resident was substantially certain to injure an employee. Therefore, Grande Point was entitled to judgment as a matter of law on Ms. Kay's employer intentional tort claim. Having found that Ms. Kay's cause of action fails, Mr. Kay's claim for loss of consortium must also fail. See, e.g., Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 93. *Page 9 
Affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] This action was filed after amended R.C. 2745.01 came into effect on April 7, 2005, altering the definition of "substantial certainty." The constitutionality of this statute is presently under supreme court review. Kaminski v. Metal Wire Prods. Co., Ohio Supreme Court Case No. 2008-0857. We need not consider this issue here, however. Following the supreme court's decision in Talik v. Fed. Marine Terminals, Inc.,117 Ohio St.3d 496, 2008-Ohio-937, ¶ 17, we apply the former law in this case because the events at issue occurred before the effective date of this amendment.
[2] By "directed," we mean the Resident's violent behavior was strategically aimed at the window, with a view to escaping. He was not directing his violent behavior toward a person or flailing about without any concern for whom or what he might hit.
[3] There is no evidence whether staff removed his restraints or whether the Resident removed them himself. *Page 1